**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| MARK HALL<br>8555 Woodland Forest SE<br>Alto, MI 49302<br><br>Plaintiff,<br><br>v.<br><br>TANDEM DIABETES CARE, INC.<br>d/b/a Tandem Diabetes Care<br>12400 High Bluff Drive<br>San Diego, CA 92130<br><br>Defendant. | CIVIL ACTION<br><br>DOCKET NO.: ____________<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Mark Hall (hereinafter referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against Tandem Diabetes Care, Inc., d/b/a Tandem Diabetes Care ("Defendant") for violations of the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. § 621, *et. seq*.) and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA" – MCLS § 37.2101, *et seq*.). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights under the ADEA. This Court may also assert supplemental jurisdiction over Plaintiff's state law claims as they arise out of the same facts as his federal law claims.

3. There would alternatively lie jurisdiction pursuant to 28 U.S.C. § 1332 because: (a) Plaintiff is a resident, domiciliary and citizen of Michigan; (b) Defendant is a resident and citizen of California; (c) Plaintiff seeks in excess of $75,000.00, exclusive of costs and interest; and (d) there is complete diversity of parties.

4. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

5. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendant is deemed to reside

where its subject to personal jurisdiction, rendering Defendant a resident of the Western District of Michigan.

6. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and requested dual-filing of said charge with the applicable state agency. Plaintiff has properly exhausted his administrative proceedings under the ADEA before initiating this action by timely filing and dual-filing his Charge with the EEOC and by filing the instant lawsuit after more 60 days has elapsed from his filings with said agencies.

## PARTIES

7. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8. Plaintiff is an adult individual, with an address as set forth in the caption

9. Defendant is global insulin delivery and diabetes technology company, which manufactures and sells advanced automated insulin delivery systems.

10. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff is a 61-year-old man and was born in 1965. Plaintiff was hired by Defendant on or about January 6, 2014; and in total, was employed by Defendant for almost 12 years as a Territory Manager.

13. By in or about January of 2025, Plaintiff began being directly managed by Melody Fox ("Fox"). Fox is an approximate 7-year employee of Defendant who performed a role similar to Plaintiff's, until she was promoted to the role of Regional Sales Manager (in January of 2025). Fox (in her mid-40s) is substantially younger than Plaintiff.

14. Prior to working under Fox, Plaintiff had three (3) different Regional Sales Managers who had supervised him directly. This management included Mark Walsh, Paul Lashells, and Phil Crow. Such management supervised Plaintiff at different timeframes over an 11-year span prior to Plaintiff being managed by Fox.

15. In this approximate 11-year timeframe (pre-Fox supervision), Plaintiff: (a) did not receive progressive discipline: (b) was objectively viewed as a top performer in the United States (including by measurable metrics); and (c) had received very good evaluations on a consistent basis (with significant praise contained therein).

16. Fox was thus Plaintiff's fourth Regional Sales Manager who terminated Plaintiff *within roughly eight (8) months of supervising him*.

17. In close proximity to (and preceding) January 2025, Plaintiff had received a very good 2024 performance evaluation, significant praise, and Plaintiff's territory had been the subject of ongoing expansion due to his exemplary performance.

18. As explained in more detail *infra*, in a very short timeframe, Fox: harassed Plaintiff; nitpicked him; engaged in age-related commentary towards him; singled him out for disparate treatment; limited his work entitlements; pretextually placed Plaintiff on a Performance Improvement Plan (a/k/a "PIP"); and then claimed that Plaintiff was terminated for performance concerns. Everything Fox asserted is verifiably false and/or demonstrably discriminatory or retaliatory.

19. In 2025, in her new role, Fox was responsible for supervising approximately 13 employees at any given time. Fox was responsible for overseeing eight (8) territories. In each territory, there were typically two (2) personnel (under Fox) assigned to the territory (a Territory Manager such as Plaintiff (focusing on sales) and a Clinical Manager).

20. Plaintiff was one of the oldest members of Fox's team (if not the oldest). Although Plaintiff had experience in different states (as to territory), his primary territory was Southwest Michigan and Northern Indiana.

21. From January of 2025 through April of 2025, the following had occurred: (a) Plaintiff was being treated in a demeaning manner; (b) Fox was abrasive with Plaintiff at times; (c) Plaintiff was being nitpicked about calendar entries despite that he was already very thorough (and had been recognized for his detail for 11 years); (d) Plaintiff was being nitpicked about expenses when he was merely attempting to generate business in a similar manner he had for nearly 11 prior years under 3 other managers; and (e) Fox was just finding any petty issue to feign being critical with Plaintiff about (without Plaintiff providing additional examples in this intended short summary).

22. Her scrutiny was subjective and like a witch-hunt to find anything she could to criticize Plaintiff. While Plaintiff welcomes constructive criticism and am open to any new procedures anyone wants him to follow, Fox's behavior was tantamount to only trying to be difficult with Plaintiff.

23. By May of 2025, Plaintiff was placed on a 60-day PIP plan. Prior to Plaintiff being placed on a PIP plan (and in the midst of the aforesaid mistreatment), Fox had asked Plaintiff questions such as "what is your retirement plan," "how much longer you plan on doing this," and a few other questions about when Plaintiff would in essence retire.

24. Plaintiff clearly interpreted Fox's inquiries and commentary to be a negative consideration about Plaintiff's age and continued employment (particularly when combined with ongoing mistreatment by her).[1]

25. Prior to May of 2025, not only had Fox made age-related comments to Plaintiff (as described above), but Plaintiff had explicitly expressed concerns with her at least twice about what Plaintiff perceived as age-related mistreatment.

26. Plaintiff told Fox on one (1) occasion that Plaintiff felt she was targeting him because of his age and, on another occasion (in an entirely separate conversation), that she was clearly treating Plaintiff differently because of his age. During both of Plaintiff's concerns, he gave some elaboration. However, Fox's mistreatment of Plaintiff did not change, and in fact, it escalated to Fox issuing Plaintiff a completely pretextual PIP.

27. As of on or about May 2, 2025, Plaintiff was placed on a PIP (that was scheduled to end on or about June 27, 2025). Fox asserted that there were various performance concerns that warranted Plaintiff being placed on a PIP.

28. This was frankly outrageous, as Plaintiff was considered a top performer under many different categories and metrics (far exceeding others in his same or similar role, regionally <u>and</u> throughout the United States). Plaintiff will elaborate extensively during litigation on these topics.

---

[1] *See e.g. Sesso v. Mercy Suburban Hosp.*, 2013 U.S. Dist. LEXIS 34401, at *12 (E.D. Pa. 2013) (statements about "retirement" are "evidence of a discriminatory animus" for a jury to consider).

29. Plaintiff even provided information to Fox showing her through company information that what she was asserting was not true in the PIP (or as to her claimed justification for putting Plaintiff on a PIP). Other aspects of the PIP were entirely subjective, disparate, unfair or wrong as well.

30. By the conclusion of the PIP, Plaintiff was over his quotas in many regards. It is beyond dispute that: (a) Plaintiff had an exemplary 11-year history pre-Fox; (b) Plaintiff was still a top-ranked performer nationally for Defendant during his tenure under Fox; and (c) that Plaintiff met or exceeded expectations, quotas, and goals ***in calendar year 2025*** pre-termination.

31. Nonetheless, Fox was asserting things like Plaintiff was not in the field enough, yet Plaintiff averaged 8-10 hours per day in the field (or more), which was far higher than most of Plaintiff's younger colleagues.

32. Plaintiff had to buy office supplies himself because Fox was refusing to reimburse (or pay for) Plaintiff.

33. Fox admonished Plaintiff for what seemed like anything he did no matter how beneficial it was to Defendant. By way of one example, Plaintiff received a text message from a colleague (working in the same role as Plaintiff), and this colleague had to go to the hospital for an emergency (family matter) on short notice. Plaintiff was asked by this colleague to meet with her client at an

upcoming breakfast (via text message and confirming call by her around 7 AM on the same day pre-breakfast meeting).

34. Plaintiff was such a team player, of course he handled the meeting with her client to ensure continuity of business to Defendant (even at the great inconvenience of last-minute notice).

35. Despite this, Fox admonished Plaintiff and claimed that he had exceeded the limit that she was (now) imposing on meeting with clients for lunch or breakfast (as to the expense(s) of same). In summary, Plaintiff was treated terribly no matter what he did or how well he performed.

36. Plaintiff was then terminated on or about September 9, 2025. There is absolutely no question that Plaintiff was subjected to a hostile work environment, placed on a PIP, and ultimately terminated because of his age and/or complaints of age-related mistreatment. Plaintiff was treated disparately and retaliatory, and there was a significant pattern of manipulating the demographics within Defendant (with hiring or retention of younger employees and lessening that of older employees).

37. Rather than investigate Plaintiff's complaints of age discrimination, Defendant instead terminated him.

38. As a consequence of Plaintiff's complaints of age discrimination, Defendant decided to terminate Plaintiff.

39. Defendant terminated Plaintiff solely because of his age and because of its perception that he should retire.

40. Following Plaintiff's termination, his duties and job functions were assumed by sufficiently younger individual(s).

**Count I**
**Violations of the Age Discrimination in Employment Act ("ADEA")**
**(Wrongful Termination: Age Discrimination)**

41. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42. Plaintiff was terminated by Defendant because of his advanced age.

43. These actions as aforesaid constitute violations of the ADEA.

**Count II**
**Violations of the Age Discrimination in Employment Act ("ADEA")**
**(Wrongful Termination: Retaliation)**

44. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

45. During his employment with Defendant, Plaintiff expressed concerns of age discrimination. Defendant performed no investigation into Plaintiff's complaints; failed to take any remedial measures; and the age-based mistreatment of Plaintiff instead grew worse.

46. Plaintiff was terminated by Defendant because of his complaints of age discrimination.

47. Defendant's actions of terminating Plaintiff because of his complaints of age discrimination constitute retaliation in violation of the ADEA.

**Count III**
**Violations of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA")**
**(Wrongful Termination: Age Discrimination and Retaliation)**

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. Plaintiff re-asserts and re-alleges each and every allegation as set forth in Counts I and II, *supra,* as they also constitute identical violations of the ELCRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B. Plaintiff is to be awarded actual damages, as well as damages for the pain and suffering, and humiliation caused by Defendant's actions (as permitted by applicable law) (Plaintiff is not seeking "pain and suffering" or emotional distress damages under the ADEA);

C. Plaintiff is to be awarded liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff shall be permitted to have a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

By: */s/ Heidi T. Sharp*
Heidi T. Sharp, Esq. (P69641)
**The Sharp Firm**
43260 Garfield, Suite 280
Clinton Twp., MI 48038
(586) 226-2627

/s/ *Adam C. Lease*
Adam C. Lease, Esq.
*Pro Hac Vice Admission Pending*
**Karpf, Karpf & Cerutti, P.C.**
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801

*Attorneys for Plaintiff*

Dated: March 18, 2026